FETT ET AL. *v.* SLIGO HILLS DEVELOPMENT CORP.

[No. 340, September Term, 1960.]

192

*Decided July 10, 1961.*

The case was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Elizabeth H. Allen* and *Philip J. Lesser* for the appellants.

*David E. Betts* and *William Wells Beckett,* with whom were *Betts, Clogg* and *Murdock* and with whom were *T. Howard Duckett, Robert C. Christie* and *Duckett, Orem* and *Christie* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

In an ejectment suit tried by the court without a jury, Judge Shure awarded the plaintiff, Sligo Hills Development Corp., the owner of a dwelling house in Montgomery County, a judgment for immediate possession of the house and damages of $9,450.00 (its rental value of $175.00 a month for fifty-four months) against its occupants, Mrs. Fett, a widow, and her four minor children. Their appeal from the judgment against them followed.

The pleas of the Fetts were not guilty and a plea on equitable grounds, alleging they were entitled to possession as "the heirs at law" of Herbert Fett, the late husband and father, "who obtained equitable title and the right to possession pursuant to a contract between the plaintiff and the said Herbert Fett, wherein the plaintiff agreed to convey legal title to the said Herbert Fett." Judge Shure found that there had never been an enforceable contract.

It appears from the testimony produced on behalf of the plaintiff—the defendants produced none—that Herbert Fett was an accountant in New York, employed by Sligo and several other affiliated corporations, that he came to Washington to work full time for these corporations, that the house in question was built by Sligo, which was a developer and builder of houses, so that Fett and his family would have a place to live, and that the family moved in on June 1, 1956, with Sligo's permission.

There was further proof that Sligo orally agreed to sell Fett the house for its cost, approximately $40,000, and that, when he sold his house in New York, he was to pay $25,000 in cash and give "a deferred purchase money mortgage for the balance of the purchase price." Fett died in February, 1957. His widow and children have continued to live in the

house since his death. Nothing was done toward consummating the understanding as to the sale and purchase of the house either before or after Fett's death. The Fetts have lived in the house rent-free since they moved in and have never paid any part of the taxes, insurance, maintenance or other expenses of the property. Nor have they ever, before or after demand to vacate or suit to enforce that demand, tendered compliance with their obligations under the understanding they asserted or suggested their ability and willingness to do so. In May, 1957, several months after Fett's death, Sligo's representative called on Mrs. Fett and asked her whether she wanted to buy the house. Her reply was that she could not afford the house and would make arrangements to move to New York after school closed. In September or October, Sligo's representative went again to see her and requested her to move, and was told that she had no place to go and intended to stay on.

After Sligo had attempted without result to obtain possession in a landlord and tenant action in the Peoples' Court of Montgomery County, the ejectment suit was filed in May 1958.

Appellant's argue that the admissions in the testimony of Sligo's officers as to the existence of the contract they rely on constitute a sufficient memorandum to satisfy the Statute of Frauds and, alternatively, that an oral contract to convey real property will be enforced specifically where there has been part performance by the vendee in reliance on the contract, as they claim there was here, and, finally, that the terms of the contract were definite enough to have permitted Fett to have obtained specific performance and that they, as his heirs, are entitled to the same equitable relief.

In our view of the case the Fetts, assuming them to be right in either of their first two contentions, cannot win because, to prevail on equitable grounds in an ejectment action, a defendant must show such facts as would entitle him to relief in a court of equity against the judgment, if recovered; 1 Poe, *Pleading*, Tiffany Ed., Sec. 275A, and *Williams v. Peters*, 72 Md. 584 (interpreting what was, before its repeal by Ch. 399 of the Acts of 1957, Sec. 91 of Art. 75 of the

Code of 1951, which has been replaced by Md. Rule 342 d 1) ; and the Fetts have not met that burden. Even if the understanding between Sligo and Fett as to the house had been reduced to writing, its terms were so indefinite that a court of equity would not have granted Fett specific enforcement against Sligo. If that remedy would not have been available to Fett as a sword against Sligo, as we hold, a claim to it cannot serve as a shield for Fett's heirs, the appellants in Sligo's ejectment suit against them. Indeed, the widow and children concede that to be of avail to them the contract they claim existed must have been and must now be enforceable specifically.

The understanding between Sligo and Fett was that the purchase price was to be the cost of the house, approximately $40,000, of which $25,000 was to be paid in cash and the balance by a purchase money mortgage. The duration of the mortgage and the interest rate were not specified and are among the glaring uncertainties of the understanding.

It was held in *Triebert v. Burgess,* 11 Md. 452, 463, and *Caplan v. Buckner,* 123 Md. 590, 602, that a contract to sell real estate was not too indefinite to be specifically enforced solely because no time was specified for the payment of a mortgage. On the other hand, it has been held consistently that the term of a ground rent must be specified if the contract is not to be too indefinite, *Globe Home Improvement Co. v. Brothers,* 204 Md. 73, 76, and cases therein cited, and in *Smith v. Biddle,* 188 Md. 315, 319, it was expressly decided that a contract of sale in which part of the purchase price was to be represented by a mortgage, the duration and interest rate of which were not specified, was too uncertain to be specifically enforced. There was a similar holding as to a note of uncertain duration and interest rate in *Naughton v. Clubb,* 188 Md. 374, 378, and as to a mortgage to be placed in such a manner as to "allow the builder to obtain a construction mortgage" in *Standard Am. Homes, Inc. v. Pasadena Bldg. Co.,* 218 Md. 619, 626. See also *Canton Co. v. N. C. Ry.,* 21 Md. 383; *Gelston v. Sigmund,* 27 Md. 334, 343; *Tarses v. Miller Fruit and Produce Co.,* 155 Md. 448, 453; and cf. *Quillen v. Kelley,* 216 Md. 396, 407; and *Baker v. Dawson,* 216 Md. 478, 488.

If the contract had been specifically enforceable as of the time of Fett's death, the authorities indicate that there would have been an equitable conversion and, since he died intestate, his ownership of the land would have descended to the appellants as his heirs, although his administrator would have been liable to pay the purchase price out of the personal estate and thus exonerate the land from the vendor's lien thereon (a matter which would not have been of practical effect in the instant case since the widow and the children inherited both real and personal estate in the same proportions). 3 *American Law of Property*, Secs. 11.22, 11.24, 11.26 and 11.27; *Birckner v. Tilch*, 179 Md. 314, cert. den. 314 U. S. 635, 86 L. Ed. 509, Reh. den. 314 U. S. 710, 86 L. Ed. 566; *Hall v. Jones*, 21 Md. 439, 447; cf. *Tobiason v. Machen*, 217 Md. 207.

Because there was no enforceable contract, "the devolution of rights and duties upon the death of either party is the same as if no contract had ever been made." 3 *American Law of Property*, Sec. 11.23; 4 Pomeroy, *Equity Jurisprudence*, Sec. 1161; *Birckner v. Tilch, supra,* at page 323 of 179 Md. Therefore Mrs. Fett and the children had no equitable interest which would defeat Sligo's legal right to immediate possession as owner of unencumbered real estate.

The texts and the cases are in predominant agreement that ejectment is an appropriate remedy under the circumstances of the case before us. (Many hold that where there is a contract which the vendee has abandoned or failed to comply with by neglecting or declining to pay or tender the purchase price the vendor may regain possession by ejectment.) 3 *American Law of Property*, Sec. 11.72; 92 C. J. S., *Vendor and Purchaser*, Sec. 464, p. 429; 55 Am. Jur. *Vendor and Purchaser*, Sec. 438, p. 846; Annotation, 107 American State Reports 722, 724; *Burnett v. Caldwell*, 9 Wall. 290, 19 L. Ed. 712; *Shapiro v. Carrubba* (N. J.), 61 A. 2d 252; *Kelso v. Ulrich* (Cal. App.), 155 P. 2d 407, 409; *Abbas v. Demont* (Neb.), 40 N. W. 2d 265, 267; *Atkinson v. Smothers* (Mo. App.), 291 S. W. 2d 645, 648; *Snyder v. Betsch* (Ariz.), 109 P. 2d 613, 615; *Wuchner v. Goggin* (9th Cir.), 175 F. 2d 261, 269; *Smith v. Keech*, 112 N. Y. S. 2d 803, 805; cf. *Coster v. Arrow Bldg. & Loan Ass'n*, 184 Md. 342, 348; *Swartz v. City, etc., Realty Co.*, 106 Md. 290, 294.

The appellants do not question the measure of damages or that $175.00 a month was the fair rental value of the property or seriously object to the propriety of assessing damages against the infant appellants. We cannot say that the judgment improperly went against the infants for damages. The holding of the majority of the cases is that a vendee rightfully in possession under an executory contract (assuming, for the discussion, that the Fetts are in that situation, as they claim) who has failed to comply with the terms of his agreement cannot defeat an ejectment suit because possession has not previously been demanded by the vendor. On the question of damages as apart from the right to possession, we think a different test should be applied in this case. Sligo put the Fetts in possession without demanding or expecting compensation in return and left them there on that basis for an extended period. It should not be entitled to damages until their occupation became tortious, which we think was when the first unequivocal demand to all the Fetts, both adult and infants, to vacate the premises was made by the filing of the ejectment suit in May, 1958. An occupancy rightful because permissive becomes tortious when a proper demand to vacate is ignored and it is then the occupants become trespassers and damages for their wrongful occupancy begin to accrue. 1 Restatement, *Torts,* Sec. 158 (b), and comment k thereof; Sec. 171, and comment d thereof.

An infant is not immune from liability for trespass in remaining on land after he has been ordered to leave, and the fact the tort is committed at the direction of a parent may render the parent also liable, but it will not excuse the child. Prosser, *Torts,* 2nd Ed., Sec. 109, p. 788; 1 Harper & James, *The Law of Torts,* Sec. 8.13, p. 658; 4 Restatement, *Torts,* Sec. 887, comment a; Annotation, Tort Liability of Child, 67 A. L. R. 2d 570, 573; *Cleveland Park Club v. Perry* (Mun. Ct. D. C.), 165 A. 2d 485.

The amount of the judgment, which was calculated at $175.00 a month for the entire period of fifty-four months, was excessive because it included twenty-four months during which the occupancy concededly was permissive and free. We reckon the number of months of tortious occupation at

198

[redacted]

thirty, which means that the recoverable damages were $5,250.00 (30 x $175.00), and judgment will be entered for that amount.

> *Judgment for immediate possession affirmed; judgment for damages reversed and judgment entered as of January 18, 1961, for damages in the amount of $5,250.00, appellants to pay the costs.*