GROOMS ET UX. *v.* WILLIAMS ET UX.

[No. 89, September Term, 1961.]

*Decided December 6, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and SYBERT, JJ.

*William H. Berman,* with whom were *Joseph H. Sharlitt,
Claude B. Kahn, Aubrey E. Robinson, Jr.,* and *Lee M. Hyde-
man* on the brief, for the appellants.

*Thomas M. Anderson, Jr.,* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

William Henry Grooms and his wife filed a bill praying the

court to reform a contract for the purchase by them of one hundred twenty-one acres of a one hundred twenty-five acre tract of land in Montgomery County from Edward Williams and his wife, the appellees, and to compel specific performance of the contract as reformed. The chancellor sustained a demurrer to the bill because it appeared to him from the bill there had been "no meeting of the minds with respect to the subject real estate," and the Groomses appealed.

The Groomses earlier had filed a bill for specific performance of the contract as written, and a demurrer to that bill was sustained without leave to amend, on the ground that the contract was too indefinite to justify the court in compelling its consummation. No request for amendment was made and no appeal taken. The details of the first suit and its outcome are set forth by the Groomses in their bill for reformation, and in this Court the parties have briefed and argued whether the rules as to election of remedies and *res judicata,* or either, bar the second suit. The demurrer to the bill for reformation does not mention either defense and so fails to comply with Maryland Rule 345 b (in that it does not "state in detail the question of law or insufficiency of substance upon which the demurrer is founded"), made applicable to equity by Rule 373 b. Under the rules mentioned and Rule 885 the contentions as to election of remedies and *res judicata* are not properly before us on appeal and will not be passed on. *Baltimore County v. Glendale Corp.,* 219 Md. 465.

We shall assume without deciding that the first suit was not a bar to the second since, in our view, the contract, if reformed as the Groomses ask, would not meet the standards necessary for specific enforcement.

The contract of sale was on a printed form. Its pertinent provisions (the italicized portions being the typewritten insertions) are: a $10 deposit on purchase of *"121 acres on Route 118 near Darnstown, Md."* for $65,000, of which $12,000 cash was to be paid at the date of conveyance, and:

> "The purchaser is to place, a first deed of trust secured on the premises *of a minimum of $21,000.00* * * * bearing interest at the rate of *6%* per cent per

annum, payable *approximately $250.00 per month due and payable in four years.*

*The balance of deferred purchase money is to be secured by a Second Deed of Trust on said property, to be paid in monthly installments of $397.50 or more including interest at the rate of 6% per annum, said payments to begin when the property is improved with dwelling houses, and said houses are sold * * *.*

\* \* \*

*20 acres of said land are subordinated to the purchasers for immediate improvement, and such other tracts shall be subordinated to use as the occasion may arise."*

The Groomses admit in their bill that the above contract is ambiguous in four particulars: (1) the nature of the subordination, (2) the location of the 20 acres to be subordinated, (3) the terms of the second deed of trust, and (4) the provisions relating to the $12,000 down payment and the $21,000 first deed of trust. But they contend that the terms intended in each of these areas were "clearly understood by all the parties," although they were never reduced to writing, and that the terms are as follows:

"[(1)] [T]he agreement relating to the subordination was that the 20 acres were to be subordinated to the proposed mortgages in order that the Complainants might, after developing and improving the land, sell this property free and clear. [(2)] The specific 20 acres which were to form the first subordination were not designated but were rather left open at the insistence of the Respondents since the Respondents desired to reserve a small portion of land amounting to three or four acres upon which they intended to build a home for themselves, and the location of these three or four acres was not determined at the time of the signing of the contract, but was, by mutual agreement, to be designated at a fu-

ture time. * * * [(3)] Complainants allege that [the] terms [of the second deed of trust], likewise, were clearly understood by all the parties, but that through the mutual mistake of the parties in reducing the agreement to writing, these terms were likewise ambiguously stated within the written agreement; in fact, * * * the Complainants were to commence payments on the second deed of trust when the improved properties began to produce a revenue (through the sale thereof) from which the Complainants would [apply] the installments under the terms of the second deed of trust. * * * [(4)] [T]he understanding of the parties [regarding the $12,000 down payment and the $21,000 first deed of trust] was * * * definite * * *, but that, again through their mutual mistake, these terms were left ambiguous * * *. In this regard, the parties' clear * * * understanding was that the $12,000.00 down-payment was to be realized from the proceeds of the first trust of $21,000.00, and the balance thereof was to be retained by the Complainants to be used in the preparation of the property for improvement. * * *"

The Williamses demurred to the bill on four grounds. Three of them, including the one the chancellor relied on in sustaining the demurrer, amount to averments that the contract was too indefinite in its terms to permit specific performance to be decreed. The fourth was that "there was no mutual mistake in reducing the alleged agreement to writing."

It has been held often that to be specifically enforced a contract for the sale of real estate must be definite and certain in its terms and free from ambiguity. *Standard Homes v. Pasadena Corp.*, 218 Md. 619; *Globe Home Impvt. Co. v. Brothers*, 204 Md. 73.

The contract before us, even if it be considered to express what the Groomses claim, in their bill for reformation, the parties understood, was uncertain in various important aspects and details. The first deed of trust was to be for "a minimum of $21,000.00." No maximum is specified. Presum-

ably a larger sum could be borrowed. The Williamses were to receive only $12,000 of the amount secured by the first lien. The disposition of the difference between $12,000 and the amount of a loan in excess of $21,000 is left to conjecture, as is the effect on the amount of the second deed of trust. The contract does not state that the Williamses are to hold the second deed of trust, although presumably this was contemplated. The time when payment of the second deed of trust is to begin is "when the property is improved with dwelling houses, and said houses are sold * * *." This, in essence, is equivalent to saying that the Groomses will begin to pay when they get the money to do so. The appellants argue this means, if it is necessary to so construe it, in a reasonable time. For the purposes of the case, we accept the contention, *Ewell v. Landing,* 199 Md. 68 (compare the cases in the annotation in 94 A. L. R. 721), although the uncertainty as to how many houses are intended and as to their sales prices, or what is a reasonable time, would not seem likely to inspire or add to a chancellor's belief that specific performance should be granted. The prospect of continued supervision of the performance of the contract would certainly raise its inappropriate head.

The basic terms of a mortgage must be stated if there is to be a specifically enforceable contract. *Fett v. Sligo Hills,* 226 Md. 190, 195, and cases cited; *Standard Homes v. Pasadena Corp., supra.* The amount of a mortgage is a basic term. *Vary v. Parkwood Homes, Inc.,* 199 Md. 411, 417. It has been held that a minimum figure does not meet the test of requisite specificity. *Beck v. Bernstein,* 198 Md. 244.

The four acres to be kept by the Williamses (and, so, the one hundred twenty-one to pass to the Groomses) and the first twenty acre tract to be "subordinated to the purchasers" (to say nothing of future tracts to "be subordinated to use as the occasion may arise") have not been determined. The Williamses, it may be granted, could be required to make a selection of the acreage to be kept by them, but it is apparent there is only vagueness as to where the first twenty acres, or any subsequent tracts, were to be. There was no agreement that either side could carve out whatever tract they wished when-

ever they wished. There was, at best, an agreement to agree in the future "as occasion may arise," and this is not a sufficient basis for a specifically enforceable contract. *Standard Homes v. Pasadena Corp., supra.*

To obtain specific performance, the description of the property involved must be such as will enable the court to determine with certainty (with the aid, if necessary, of admissible extrinsic evidence) what property is intended, reasonable certainty only being required. Here neither the agreement of the parties nor extrinsic evidence will produce reasonable certainty.

The chancellor did not err in dismissing the bill for reformation and specific performance.

*Order affirmed, with costs.*