SILVERMAN *v.* KOGOK, Administrator, Etc. et al.

[No. 308, September Term, 1964.]

72

*Decided May 26, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Charles T. Finley* for the appellant.

*Frank P. Flury,* with whom were *John C. Tracey* and *Flury & McLaughlin* on the brief, for the appellees.

OPPENHEIMER, J., delivered the opinion of the Court.

The appellant, a broker, who had both an exclusive listing contract for the sale of his principal's property and a purchasing agreement conditioned on the property not being sold at the stated price, sued the owner, now deceased, for specific performance of his agreement to sell. Three defenses were raised by the appellees, who are the administrator of the estate of the deceased owner and his heirs at law: that the contract for the sale of the real estate was not sufficiently definite and certain in its terms to be specifically enforceable; that at the time the contract was entered into, an interest in the property was owned by the defendant's brother, who was not joined as a party in the bill and who had not divested himself of his interest; and that the court should not decree specific performance because the plaintiff-appellant was in a dual and conflicting capacity. The court below decided the first issue in favor of the appellant but held against him on the other two grounds and denied specific performance.

At the hearing before Judge Powers, a pre-trial deposition of Gabriel S. Gabriel, sometimes known as L. S. or S. Gabriel (Gabriel), the original defendant, was offered in evidence and testimony of various witnesses was taken. The appellant, Silverman, testified that he had lost the original listing agreement and contract between him and Gabriel. In lieu of the original, he

produced a photostatic copy certified as true by a notary public. The court accepted the copy under the best evidence rule.

The front of this document contains the listing agreement. Part of this portion of the document is typewritten, the remainder is handwritten and is barely legible. The listing agreement is as follows: "L. S. Gabriel," (initial) "MS 30 January 1961. I hereby authorize and give Murray Silverman the exclusive right to sell approximately 18,300 square feet on Northwest side of intersection of Rte 50 & Princess Garden Pkwy for a period of 90 days. Minimum price to be $1.00 per sq. foot. (see over) * * * Taxes, insurance, rent, etc., to be adjusted to date of transfer. I also agree to pay said Murray Silverman a commission of ten per cent in case sale is made during said period. He is authorized to place neat 'For Sale' signs on said Real Estate. REMARKS: Owner to receive $2,800.00 cash above real estate commission. Balance of purchase money payable" (stricken out word, asterisk) "(trust) $100.00 per month. Releases at $1.00 per foot (SEAL) 6% interest. Due in full in five years." (A signature) "Gabriel C. Gabriel. (SEAL) Owners Telephone DI-7-8242 Address * 1st trust subordinated to institution construction loan." (indecipherable).

The back of the document, which is all handwritten, reads as follows: "Owner and Broker hereby agree that if property is not sold in 90 days—Broker will purchase at $.90/ft (net) under same condition (90 day settlement from contract.)" (signatures) "Murray Silverman, Gabriel C. Gabriel 30 January 1961."

At the time he signed the agreement, Gabriel had only a contract interest in the property. The record owner at that time was Bird H. Dolby. In his deposition, Gabriel stated that his brother, Edward, had an interest in the Dolby contract but later stated that his brother had never contributed anything toward it. There was other testimony at the hearing as to whether or not Edward had an actual interest but it is uncontradicted that when Silverman made his agreement with Gabriel, Silverman had no knowledge or notice of any deficiency in title or, indeed, that Gabriel had only a contract interest.

The listing authorized sale of the property at $1.00 a square foot. If a purchaser was obtained at that price, Gabriel agreed

to pay to Silverman a real estate commission of 10%. The property consisted of 18,300 square feet, so that the authorized selling price, less commission, would be $16,470. If the property was not sold within 90 days, Gabriel agreed to sell it to Silverman, and Silverman agreed to buy it, at the same price. It has been stipulated in the case that the appellees had no evidence to show that at the time the amount of ninety cents a square foot was obviously an unfair price or, insofar as the price was concerned, that there was any fraud involved.

During previous periods, Gabriel had listed the property with Silverman or one of his salesmen at $1.20 a square foot. During these periods, Silverman's organization had been in touch with a number of prospective purchasers and had offered the property at $1.25 a square foot but no sale had been effected.

Silverman testified that during the listing period of ninety days in the agreement before us one of his salesmen had been in touch with a number of people in an endeavor to interest them in the property. Silverman did not testify as to the price at which the salesman had offered the property.[1] No sale was effected during the ninety day period.

In his deposition, Gabriel stated that in April, 1961, through his attorney, he called upon Silverman to purchase the property in accordance with the terms of the agreement. Silverman testified that when Gabriel's attorney asked him to settle under the terms of the contract, Silverman replied that he had ninety days from the 15th of April. He ordered a title examination and found that Bird Dolby was the owner of record. A settlement date was scheduled for October but Gabriel did not appear on the date fixed. Gabriel stated in his deposition that his wife refused to sell the property. The fact that Dolby had record

---

1. Silverman put into evidence two letters which he himself had written offering the property, but these letters were obviously written during a listing prior to the agreement here involved. One letter was dated January 16, 1960; the other, February 25, 1960. The listing agreement before us is dated January 30, 1961. One letter discussed a "negotiation basis" for the price of $1.20-$1.30 a square foot; the other, "a firm negotiation basis" of $1.15 a square foot. The listing price a square foot in the January 30, 1961 agreement was $1.

title apparently presented no obstacle to the consummation of Gabriel's contract with Silverman.

Judge Powers was properly disturbed by the inherent conflict of interests in Silverman's dual position as broker and conditional purchaser. A broker is a fiduciary. *Coppage v. Howard,* 127 Md. 512, 521, 96 Atl. 642 (1916); Restatement, Second, *Agency 2d,* § 13. See also *Buffington v. Wentz,* 228 Md. 33, 38-39, 178 A. 2d 417 (1962) and cases therein cited. Because the interests of prospective seller and buyer as to price are necessarily adverse, the law will not permit an agent of the vendor, while the employment continues, to assume "the essentially inconsistent and repugnant relation of agent for the purchaser." *Slagle v. Russell,* 114 Md. 418, 426-427, 80 Atl. 164 (1911). See also *Hardy v. Davis,* 223 Md. 229, 232, 164 A. 2d 281 (1960). *A fortiori,* the principle applies where the agent himself is the purchaser. *Slagle v. Russell, supra,* at 427; Restatement, Second, *Agency 2d,* § 389. However, the agent may act as principal if the agreement clearly gives him the right to do so. See *Blake v. Stump,* 73 Md. 160, 172, 20 Atl. 788 (1840). Restatement, Second, *Agency 2d,* § 389 comment b. Where the agreement gives the agent the right to purchase, the burden is on the agent to show that he fully and fairly performed his duties as broker before he availed himself of his individual right to purchase. See *Woodcock v. Dennis,* 175 Md. 9, 15, 199 Atl. 845 (1938); Restatement, Second, *Agency 2d,* § 389 comment e; Clapp, *A Fiduciary's Duty of Loyalty,* 3 Md. L. Rev. 221, 226 (1939).

In the case before us, the conflict is obvious between Silverman's duty as broker, to endeavor to obtain the best price possible for Gabriel's land, and Silverman's individual right to buy the property if it was not sold at the authorized price in ninety days. While the right to sell, as broker, was at $.90 a square foot net, and the right to buy was at the same price, if Silverman, as broker, had obtained an outside purchaser at any price over $1.00 a square foot, the resultant advantage to Gabriel is clear. Silverman's testimony as to his efforts to sell, as broker, gives an impression of less than arduous endeavor. One of his salesmen was in touch with prospects, but the nature of the salesman's efforts and the price discussed are not in evidence.

On the other hand, it is undisputed that Gabriel, before his death, called upon Silverman to perform his obligation to buy the property himself. Whether Gabriel was aware of the limited manner in which Silverman had purported to carry out his duties as broker we cannot know.

We find it unnecessary to decide whether Judge Powers was in error in holding that specific performance should not be decreed because of the circumstances under which Silverman sought to exercise his right of purchase. Nor do we reach the question of whether Gabriel's brother Edward had such a contractual interest in Gabriel's contract to buy the land from Dolby that he was a necessary party to the suit. (In any event, if Silverman's agreement of purchase with Gabriel is enforceable, Silverman would be entitled to the one-half interest in the Dolby contract which, admittedly, Gabriel had). We hold that the contract under which Gabriel agreed to sell the property to Silverman was too indefinite and vague to be specifically enforceable.

We have repeatedly held that to be specifically enforced a contract for the sale of real estate must be definite and certain in its terms and free from ambiguity. *Grooms v. Williams,* 227 Md. 165, 170, 175 A. 2d 575 (1961) ; *Fett v. Sligo Hills Development Corp.,* 226 Md. 190, 194-195, 172 A. 2d 511 (1961) and cases therein cited. The scribbled agreement here involved does not meet that test.

The conditional agreement of purchase and sale embodies the terms of the listing agreement. Those terms are that the owner is to receive $2800 cash above real estate commissions. "Balance of purchase money payable $100 per month * * * 6% interest. Due in full in five years." It is not stated, and cannot be determined from the fragmented phraseology, when the interest is to be paid, or whether the $100 per month to be paid on the balance of the purchase money is to include the interest. The total purchase price, at $.90 a square foot, would be $16,470, of which only $2800 was to be paid in cash. Interest on the remainder would be over $800 a year; the first month's interest would be approximately $68. Under the circumstances, in a five year contract, whether the seller is to receive $100 or $168 for the first month, with similar (if gradually less) pos-

sible differences for the remainder of the contract cannot be deemed immaterial. The contract is too indefinite, uncertain and ambiguous to be specifically enforceable.

On substantially similar facts, the Supreme Court of Texas came to a similar conclusion. *Bryant v. Clark,* 163 Tex. 596, 358 S. W. 2d 614 (1962). In that case, as in this, suit was brought to compel specific performance of a contract to buy and sell real estate. The principal question was whether the terms of the written contract were sufficiently certain and definite so as to warrant specific performance. The contract, after describing the property to be conveyed, provided as follows:

> "Price to be $10,000.00 (Ten thousand dollars). Mr. Bryant agrees to pay $2,000.00 cash and balance at 6% interest, payments to be agreed upon by seller and buyer. We have agreed as follows: 15 annual installments as balance."

In holding that the judgments of the courts below denying specific performance of the contract must be affirmed, the majority of the Supreme Court of Texas said:

> "The contract provides for 6% interest on the deferred balance, but it does not provide when the interest is payable or in what amounts.
>
> * * *
>
> "If, as petitioner suggests, we should hold that the parties intended to provide for payment of the deferred balance in fifteen *equal* annual installments and write that provision into our judgment, what do we then hold the parties intended with respect to interest payments and what would we write into our judgment with respect thereto? Would we provide that the interest be paid annually on the unpaid balance? Or would we amortize interest and provide that the deferred balance and interest be paid in fifteen equal annual installments? Or would we provide that the payment of interest be deferred until the last payment on principal? To require any of these methods of paying interest is to make a contract for the parties by sup-

plying terms with respect to important subject matter of the contract which they left totally uncertain in their written memorandum." 163 Tex. at 599.

In his finding to the contrary on the issue of uncertainty, the trial judge, in our opinion, was clearly in error. However, on the other issues, upon which we do not pass, he came to the conclusion that the relief prayed should be denied. We agree with the result reached in his opinion.

*Decree affirmed; costs to be paid by the appellant.*