MANNING-SHAW REALTY CO., INC. *v.*
McCONNELL, ET UX.

[No. 515, September Term, 1965.]

580

*Decided December 7, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

Submitted on the brief by *Thomas Knox* for appellant.

*James Berkeley Murphy,* with whom was *Solomon B. Levin* on the brief, for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

A real estate broker has appealed from a summary decree denying it a commission. The facts from which this simple question stems are as sparse as they are unusual. They appear to be as follows.

The McConnells (sellers) employed appellant (the broker) to find a buyer for their home. In September of 1962 the broker brought them a contract which provided for the sale of their property (724 Denison Street, Baltimore) to Frank H. Phillips and his wife (buyers) for $6,000, subject to a $78 ground rent and called for (among other things) a down payment of $400, a deposit of $150 to be used for settlement costs, and a commission to the broker of 6% of the sale price plus one-half of the annual ground rent. Although time was declared to be of the essence a date for the completion of settlement was not stated. The paragraph which will be our principal concern is as follows:

"Balance in cash on date of settlement as follows: A $4000.00 mortgage to Parkwood Building and Loan Association, payments on which are not to exceed $18.00 per week, and a second mortgage in the amount of $1600.00 to the sellers, for five years, with interest at six per cent, payments not to exceed $3.00 per week."

The contract was signed by both sellers and buyers, apparently on 13 September 1962.

On 10 October 1962 the broker sent a letter to the buyers notifying them that settlement would take place at the office of J. Calvin Carney, Esq., at 3:00 P.M. on Tuesday, 16 October. The letter instructed them to bring cash or a cashier's check for the balance of the settlement money but no amount was stated. The buyers neither replied to the letter nor appeared at the appointed time; indeed, nothing more was heard from them until 22 January 1964, fifteen months later, when they filed their bill of complaint in the Circuit Court for Baltimore County asking that the contract be declared null and void and that their money be refunded.

Buyers, in their bill, allege advising sellers they had "little cash reserve" and "less borrowing power" and that sellers told them they (sellers) would "obtain the necessary mortgage" and make such other "suitable" arrangements as might be necessary, all of which, say the buyers, the sellers failed to do. Attached to the bill as an exhibit was the contract which they assert is "uncertain, indefinite and vague in its terms" and therefore unenforceable.

In their answer sellers deny receiving any money, declaring it to be in the possession of the broker. They deny also any conversations with buyers touching upon any plan for financing the sale and, they declare, they were "ready, willing and able" to complete the sale. They challenge the assertion the contract is "uncertain, indefinite and vague" claiming it to be "definite and clear."[1] They say buyers not only have forfeited the down pay-

---

1. In this Court sellers take a contrary view. Now they contend the contract is "uncertain, indefinite and vague" and is consequently unenforceable.

ment but they are also liable to sellers for $2,500 in damages because, having vacated the property before the settlement date sellers were later obliged to sell it for $2,500 less than the agreed price ($6,000). Sellers filed, simultaneously with their answer, a third party proceeding against the broker, in which they admit the broker was acting as their agent but they say that they had no knowledge of any promises, such as alleged by buyers. They demand judgment against the broker for "all sums which may be" awarded against them in favor of buyers. The broker in its answer to the third party claim denies having made any promises to buyers concerning the procurement of mortgage money or the making of any other "suitable arrangements" claiming it has earned a commission of $399 as a result of the sale. Its answer did not, however, allege that the contract of sale was enforceable. In fact, it is completely silent in this regard.

Eighteen months later buyers moved for a summary decree against sellers. Shortly thereafter sellers moved for a summary "judgment" against the broker for $550. At the conclusion of the hearing on 30 November 1965 Judge Menchine entered a "monetary decree" in favor of buyers against sellers in the sum of $550 and, at the same time, he entered a "monetary decree" in favor of sellers against the broker for the same amount. In his brief "opinion," filed 26 January 1966, he said "the contract is declared unenforceable." Only the broker has appealed.

Sellers contend Code, Art. 2, § 17 (1957, Cum. Supp. 1966) requires a contract of sale to be "valid, binding and *enforceable*" if a broker's claim for a commission is to be upheld. (Emphasis supplied.) Since this contract is not enforceable because it is too uncertain and too indefinite the broker, sellers argue, cannot "be deemed to have earned the customary or agreed commissions." In the odd circumstances here present we think there is much force in their argument.

It is interesting to note that the broker made no effort to meet the question of enforceability in its answer to the third party proceeding, in its answer to the motion for summary judgment, in its affidavit to the motion for summary judgment, or in its brief in this Court. There was no appearance for the broker when the case was argued.

Whether Judge Menchine was correct in holding the contract of sale to be unenforceable is, of course, the only question which must be decided. In a recent case, *Silverman v. Kogok, Adm'r,* 239 Md. 71, 77-78, 210 A. 2d 375 (1965), Judge Oppenheimer, for the Court, said:

"We have repeatedly held that to be specifically enforced a contract for the sale of real estate must be definite and certain in its terms and free from ambiguity. *Grooms v. Williams,* 227 Md. 165, 170, 175 A. 2d 575 (1961); *Fett v. Sligo Hills Development Corp.,* 226 Md. 190, 194-195, 172 A. 2d 511 (1961) and cases therein cited. The scribbled agreement here involved does not meet that test.

"The conditional agreement of purchase and sale embodies the terms of the listing agreement. Those terms are that the owner is to receive $2800 cash above real estate commissions. 'Balance of purchase money payable $100 per month * * * 6% interest. Due in full in five years.' It is not stated, and cannot be determined from the fragmented phraseology, when the interest is to be paid, or whether the $100 per month to be paid on the balance of the purchase money is to include the interest. The total purchase price, at $.90 a square foot, would be $16,470, of which only $2800 was to be paid in cash. Interest on the remainder would be over $800 a year; the first month's interest would be approximately $68. Under the circumstances, in a five year contract, whether the seller is to receive $100 or $168 for the first month, with similar (if gradually less) possible differences for the remainder of the contract cannot be deemed immaterial. The contract is too indefinite, uncertain and ambiguous to be specifically enforceable."

Among the earlier decisions of this Court which support Judge Oppenheimer's holding are *Standard Homes v. Pasadena Co.,* 218 Md. 619, 147 A. 2d 729 (1959); *Smith v. Biddle,* 188 Md. 315, 52 A. 2d 473 (1947); *Applestein v. Royal Realty Corp.,* 180 Md. 274, 23 A. 2d 684 (1942).

The similarity between *Silverman* and the case at bar is striking. Indeed, precisely the same language could be used in this opinion simply by substituting for the figures used by Judge Oppenheimer the figures in the second mortgage provision of the contract of sale.

It is not possible for us to agree with Judge Menchine's reasons for his decision because he did not give any.[2] Whatever his reasons, however, we think he reached the correct result and we shall not disturb it.

*Decree affirmed.*
*Costs to be paid by appellant.*

---

2. Maryland Rule 18 c. *Southwestern Mines, Inc. v. P. & J. Coal Company,* 244 Md. 180, 223 A. 2d 162 (1966) and the cases therein cited.