OPINION
{¶ 1} Plaintiff-Appellant, DB Midwest, LLC ("Midwest"), appeals from the judgment of the Logan County Court of Common Pleas, denying its motion for summary judgment and granting summary judgment to Defendant-Appellee, L.P.Z. Construction Company, Inc. ("LPZ"). On appeal, Midwest argues that the trial court erred in denying its motion for summary judgment and granting LPZ's motion for summary judgment because LPZ expressly agreed with Pataskala Sixteen, LLC ("Pataskala") to subordinate its mortgage to future first mortgage financing; because an express written agreement is not required between mortgagees to enforce a subordination agreement between the mortgagor and mortgagee; because LPZ had imputed notice of the subordination agreement and should be bound thereto; because no separate consideration is necessary between two mortgagees in order to enforce a subordination agreement between a mortgagee and a mortgagor, as consideration already exists in the underlying mortgagee-mortgagor transaction; and, because the subordination agreement was *Page 3 
sufficiently specific to be enforceable. Finding that the subordination agreement lacked the essential terms necessary for enforceability, and that the subordination agreement was not a self-executing subordination agreement, but an agreement to agree to a future subordination, we affirm the judgment of the trial court.
 {¶ 2} In April 2003, LPZ entered into a real estate purchase contract with Players Glenn, LLC ("Players") for LPZ to sell, and Players to purchase, a sixty-five acre tract of land in Bellefontaine, OH ("the property"). The terms of the contract required Players to pay sixty percent of the contract price at closing, with a promissory note secured by a mortgage on the property to be given to LPZ for the remaining forty percent of the purchase price. Players purchased the property as part of a development project to build homes and condominiums. To assist Players in obtaining development financing from other lenders, the following language was included in the purchase contract.
 Seller agrees to subordinate said mortgage, at Buyer's expense, to Buyer's development mortgage, and to release from said mortgage any lots sold by Buyer, at Buyer's expense, and for the consideration of $1,700.00 per lot.
(Apr. 2003 Real Estate Purchase Contract). Prior to the closing, Players assigned all of its rights and delegated all of its duties under the real estate purchase contract to Pataskala *Page 4 
 {¶ 3} In June 2004, pursuant to the real estate purchase contract, Pataskala signed a promissory note to LPZ as payee for forty percent of the contract price. The following language was included in the note:
 This Note is secured by a Mortgage dated June 29, 2004 to Payee on property located at Bellefontaine, Logan County, Ohio, which said mortgage shall be subordinated to first mortgage financing obtained by Maker.
(June 2004 Promissory Note).
 {¶ 4} On the same day, Pataskala also executed a mortgage on the property in favor of LPZ. The mortgage also included the subordination agreement language, stating that "[t]his mortgage shall be subordinated to first mortgage financing obtained by undersigned Pataskala Sixteen, LLC or its assigns." (June 2004 Mortgage). This mortgage was subsequently recorded in the Logan County Recorder's Office on July 15, 2004.
 {¶ 5} In July 2004, Pataskala entered into a loan agreement with Sky Bank ("Sky") for $752,000 in development financing. Under the terms of the agreement, the loan was to be secured by a first mortgage lien on the property.
 {¶ 6} In August 2004, Pataskala signed a promissory note to Sky for $752,000, and, on the same day, Pataskala also executed an open end mortgage to Sky on the property, with the mortgage being subsequently recorded in the Logan County Recorder's Office on September 23, 2004. Shortly thereafter, Huntington *Page 5 
National Bank ("Huntington") succeeded to the note and the mortgage as a successor in interest to Sky.
 {¶ 7} In November 2007, Huntington filed a foreclosure action against Pataskala and all other parties claiming an interest in the property, including LPZ, to foreclose on its mortgage due to Pataskala's default on the promissory note. Subsequently, LPZ filed an answer to Huntington's claim and a cross claim against Pataskala, asserting that its mortgage on the property was superior to the Huntington mortgage, and demanding that its promissory note be satisfied first from the foreclosure sale proceeds.
 {¶ 8} In January 2008, the trial court issued a default judgment in foreclosure against Pataskala, finding that Huntington and LPZ had valid mortgages on the property, and ordering a foreclosure sale to satisfy the debts owed to the parties.
 {¶ 9} In April 2008, Huntington filed a motion for summary judgment as to its lien priority, asserting that it held a first priority lien on the foreclosed property because of a self-executing subordination agreement between Pataskala and LPZ, which subordinated LPZ's mortgage to its "first mortgage financing." In addition, Huntington also filed a motion for substitution of plaintiff, requesting the trial court to substitute Midwest as plaintiff in the action because Huntington had assigned its note, mortgage, and all claims secured thereby to Midwest. *Page 6 
 {¶ 10} Subsequently, the trial court granted Huntington's motion to substitute Midwest as plaintiff, and LPZ filed a motion in opposition to Midwest's summary judgment motion, asserting that the subordination agreement in the contract, note, and mortgage was unenforceable because it lacked essential terms; that Midwest was not a party to the agreement nor had Midwest provided consideration for the agreement, and therefore it has no right to enforce it; and, that summary judgment should be granted finding that LPZ occupies a first priority position on the mortgage because it filed its mortgage first in time.
 {¶ 11} Attached to LPZ's motion for summary judgment was the affidavit of Caroline Zell, the president and sole owner of LPZ. In her affidavit, she testified that LPZ received a promissory note and mortgage from Pataskala as consideration for the sale of LPZ's property; that she signed the sale contract as an agent for LPZ; that, upon signing the contract, she was not aware of the subordination language contained therein; that it was always her understanding that she would have a first mortgage on the property; that she would never have knowingly permitted LPZ's mortgage to be subordinated to a second priority position; and, that neither Sky or Huntington ever contacted her regarding their mortgage with Pataskala or the issue of entering into an agreement with LPZ to place its mortgage into a first priority position. *Page 7 
 {¶ 12} In June 2008, the trial court overruled Midwest's motion for summary judgment and granted LPZ's motion for summary judgment, finding that "the language relied upon by the Plaintiff does not constitute a `self-executing subordination' and LPZ's mortgage is superior to Plaintiff's," as LPZ filed its mortgage first in time.
 {¶ 13} It is from this judgment that Midwest appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING DEFENDANT-APPELLEE LPZ CONSTRUCTION COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF-APPELLANT DB MIDWEST LLC'S MOTION FOR SUMMARY JUDGMENT, BECAUSE AN EXPRESS WRITTEN AGREEMENT IS NOT REQUIRED BETWEEN MORTGAGEES IN ORDER TO ENFORCE A SUBORDINATION PROVISION OR AGREEMENT.
 Assignment of Error No. II THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE LPZ CONSTRUCTION COMPANY, INC'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF-APPELLANT DB MIDWEST LLC'S MOTION FOR SUMMARY JUDGMENT, BECAUSE A CONSENSUS ON THE ISSUE OF SUBORDINATION WAS REACHED BETWEEN DEFENDANT-APPELLEE LPZ CONSTRUCTION COMPANY, INC. AND DEFENDANT PATASKALA SIXTEEN LLC THAT DEFENDANT-APPELLEE LPZ CONSTRUCTION COMPANY INC.'S MORTGAGE WOULD BE SUBORDINATED TO FIRST MORTGAGE FINANCING OBTAINED BY DEFENDANT *Page 8 PATASKALA SIXTEEN, LLC AND THE SUBORDINATION SHOULD BE ENFORCED AS BETWEEN THE PARTIES.
 Assignment of Error No. III THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE LPZ CONSTRUCTION COMPANY, INC'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF-APPELLANT DB MIDWEST LLC'S MOTION FOR SUMMARY JUDGMENT, BECAUSE DEFENDANT-APPELLEE LPZ CONSTRUCTION COMPANY, INC. HAD IMPUTED NOTICE OF THE SUBORDINATION PROVISION AND AGREEMENT AND IS, THEREFORE, BOUND BY THE SUBORDINATION PROVISION AND AGREEMENT.
 Assignment of Error No. IV THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE LPZ CONSTRUCTION COMPANY, INC'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF-APPELLANT DB MIDWEST LLC'S MOTION FOR SUMMARY JUDGMENT, BECAUSE NO SEPARATE CONSIDERATION IS REQUIRED TO BE PAID BY A MORTGAGEE TO A SUBORDINATING MORTGAGEE IN ORDER FOR THE SUBORDINATION PROVISION TO BE ENFORCEABLE WHEN CONSIDERATION ALREADY EXISTS AS PART OF THE ORIGINAL TRANSACTION.
 Assignment of Error No. V THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE LPZ CONSTRUCTION COMPANY, INC'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF-APPELLANT DB MIDWEST LLC'S MOTION FOR SUMMARY JUDGMENT, ON THE GROUNDS THAT THE SUBORDINATION PROVISION AT ISSUE LACKS SPECIFICITY AND IS UNENFORCEABLE BECAUSE THERE WERE NO TERMS RELEVANT TO THE SUBORDINATION PROVISION THAT WERE LEFT OPEN TO FURTHER NEGOTIATION BETWEEN DEFENDANT-APPELLEE *Page 9 LPZ CONSTRUCTION COMPANY, INC. AND DEFENDANT PATASKALA SIXTEEN, LLC.
 {¶ 14} Due to the nature of Midwest's assignments of error, we elect to address its fifth assignment of error first.
 Assignment of Error No. V {¶ 15} In its fifth assignment of error, Midwest argues that the trial court erred in denying its summary judgment motion and granting summary judgment in favor of LPZ on the grounds that the subordination provision at issue lacked the required specificity to make it an enforceable agreement. Specifically, Midwest contends that even though the subordination agreement lacked specific, certain terms, the parties, through the language of the agreement, did not leave any terms open for further negotiation; therefore, the agreement is not merely an agreement to subordinate in the future, but a definite, enforceable, and current subordination agreement, even though not complete in all respects.
 {¶ 16} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co., 148 Ohio App.3d 596,2002-Ohio-3932, ¶ 25, citing State ex rel. Cassels v. Dayton City SchoolDist. Bd. of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. *Page 10 
Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ. R. 56(C); Horton v. Harwick Chemical Corp.,73 Ohio St.3d 679, 686-687, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 358-59, 1992-Ohio-95.
 {¶ 17} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support its argument. Id. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. Id.; Civ. R. 56(E).
 {¶ 18} In general, the first mortgage on a parcel of real property recorded at the county recorder's office in the county in which the property is situated has priority over all subsequent mortgages on that same property. R.C. 5301.23; L.O.F. Employees Federal Credit Union v.Hahn, 6th Dist. No. L-82-258, *Page 11 1982 WL 6663. However, the parties may waive priority by two distinct methods. First, pursuant to R.C. 5301.35, the party with the mortgage priority may waive that priority by noting the waiver on the original mortgage and signing it, by noting the waiver on the margin of the record of the mortgage and signing it, or by executing a separate acknowledged instrument waiving priority, as provided under R.C. 5301.01. Id. Second, the parties may also waive priority by a separate independent agreement. Id., citing Glick v. Marscot (App. 1931), 10 Ohio Law Abs. 250; Curtis v. J.L. Shunk Rubber Co. (App. 1931), 9 Ohio Law Abs. 375.
 {¶ 19} To be given effect, all subordination agreements must comport with traditional contract law principles. Ross v. Roberson, 2d Dist. No. CA 9983, 1987 WL 5532. "The elements necessary to form a contract include `an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object of consideration.'" Brotherwood v.Gonzales, 3d Dist. No. 10-06-33, 2007-Ohio-3340, ¶ 12, quotingKostelnik v. Helper, 96 Ohio St.3d 1, 3, 2002-Ohio-2985. Furthermore, the contracting parties must have a meeting of the minds on the essential terms of the contract. Episcopal Retirement Homes, Inc. v.Ohio Dept. of Industrial Relations (1991), 61 Ohio St.3d 366, 369.
 {¶ 20} Ohio case law does not set forth an established standard as to what essential terms are necessary to make a subordination contract enforceable; *Page 12 
however, important terms that have been mentioned are "maximum terms for loan amounts, interest rates, and loan periods, as well as limitations upon the use of loan proceeds." Builders Fidelity Acceptance Corp. v.Daily, 9th Dist. No. 9877, 1981 WL 3914, citing Troj v. Chesbroc (1972),30 Conn. Sup. 30; Hux v. Raben (1966), 74 Ill. App.2d 214, aff d (1967),38 Ill.2d 223; Grooms v. Williams (1961), 227 Md. 165. Moreover, a subordination agreement may be informal, but "it must at least be an agreement, a `bargain of the parties in fact as found from their language or by implication from other circumstances.'" Total TechnicalServices v. Kafoure Associates, 8th Dist. Nos. 51339, 51401,1986 WL 13687, quoting R.C. 1301.01(C).
 {¶ 21} A similar issue to the one presented in this case was argued before the Ninth Appellate District in Builders, supra, and the court addressed whether a subordination clause in a mortgage executed between a mortgagor and a mortgagee could be enforced by a subsequent mortgagee to obtain a first priority position on its mortgage executed second in time. The subordination clause contained in the mortgage provided that "[mortgagee agrees to subordinate the first lien of this mortgage in favor of a construction loan or loans, obtained for the purposes of building a house or houses on the premises described above * * *." Furthermore, the agreement between the mortgagor and mortgagee, prior to the execution of the mortgage, stated that "[r]elative to such mortgage, the same shall *Page 13 
contain a provision to the effect that Seller will subordinate such mortgage in favor of a construction loan or loans for the purposes of a building a house or houses on this lot * * *." The court found that the language contained in the subordination clause lacked essential terms necessary for its enforceability; that no subsequent agreement was made by the parties to cure the indefiniteness of the subordination agreement; and, that the subsequent mortgagee never even contacted the first mortgagee in regards to the subordination agreement. Accordingly, the court found that the subordination agreement was "merely an agreement to make an agreement, and not in and of itself a legally enforceable and valid agreement."
 {¶ 22} Turning to the facts of this case, the mortgage executed by Pataskala to LPZ was recorded prior to the mortgage executed by Pataskala to Sky. Accordingly, LPZ occupies a first lien priority position pursuant to R.C. 5301.23, unless a separate subordination agreement was reached by the parties or LPZ properly subordinated its priority under R.C. 5301.35. Here, LPZ and Pataskala placed a subordination clause in the real estate purchase contract, promissory note, and mortgage, but the clause contained only a general agreement between LPZ and Pataskala that LPZ would subordinate its first lien priority, with no specifics as to the amount of the subordination, length of time of the subordination, when the subordination would occur, or to whom it would subordinate. *Page 14 
 {¶ 23} Accordingly, because the subordination clause contained in the contract, note, and mortgage lacked specific, essential terms, we find that there was no meeting of the minds to constitute a valid and enforceable agreement under contract law principles. Just as the Ninth District also found in the unenforceable subordination agreement inBuilders, this agreement lacks essential terms, no subsequent agreement was ever made between the parties to cure the indefiniteness of the agreement, and Midwest never contacted LPZ regarding subordination, a simple step that would have likely solved any dispute regarding priority and prevented this litigation.
 {¶ 24} Furthermore, the purpose of the subordination agreement supports a finding that this agreement was not an enforceable "self-executing" subordination agreement, but that it was merely an agreement to agree to subordinate in the future. Pataskala purchased the property from LPZ with the intention of developing the property and selling it off in separate lots. By this purpose and the lack of essential terms in the subordination clause, it appears that the clause was placed into the contract, note, and mortgage to facilitate Pataskala's efforts in obtaining development financing by providing an incentive to institutions to lend funds by offering them the potential opportunity to have first lien priority, not by granting any future lender automatic priority. Although the subordination clause in the note and mortgage state that LPZ's interest "shall be subordinated to first *Page 15 
mortgage financing" and not that it may be subordinated, we find the lack of essential terms in the subordination clause and the underlying purpose of the clause support the trial court's grant of summary judgment based on the conclusion that this was an agreement to agree to future subordination and not a self-executing subordination agreement.
 {¶ 25} Accordingly, we overrule Midwest's fifth assignment of error.
 Assignments of Error Nos. I, II, III, and IV {¶ 26} In its first, second, third, and fourth assignments of error, Midwest argues that the trial court erred in denying its motion for summary judgment and granting LPZ's motion for summary judgment because an express agreement between mortgagees is not required to enforce a subordination provision between a mortgagor and mortgagee; because the mortgagee and mortgagor agreed to a subordination provision and it should be enforced; because LPZ had imputed notice of the subordination provision and must be bound thereto; and, because no separate consideration is required between mortgagees to enforce a subordination agreement executed between a mortgagee and mortgagor, as consideration already exists in the underlying transaction. However, our disposition of Midwest's fifth assignment of error renders its first, second, third, and fourth assignments of error moot, and we decline to address them. App. R. 12(A)(1)(c). *Page 16 
 {¶ 27} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur. *Page 1