[Cite as *Fifth Third Mtge. Co. v. Fillmore*, 2013-Ohio-312.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |  |
|---|---|---|---|
|  | : | JUDGES: |  |
| FIFTH THIRD MORTGAGE | : | W. Scott Gwin, P.J. |  |
| COMPANY | : | William B. Hoffman, J. |  |
|  | : | Julie A. Edwards, J. |  |
| Plaintiff-Appellee | : |  |  |
|  | : | Case No. 12 CAE 04 0030 |  |
| -vs- | : |  |  |
|  | : |  |  |
|  | : | O P I N I O N |  |
| DAVID FILLMORE | : |  |  |
|  |  |  |  |
| Defendant-Appellant |  |  |  |

CHARACTER OF PROCEEDING:        Civil Appeal from Delaware County
Court of Common Pleas Case No.
09 CVE 10 1464

JUDGMENT:        Affirmed

DATE OF JUDGMENT ENTRY:        January 28, 2013

APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

AMELIA A. BOWER        STEVEN E. HILLMAN
DAVID VAN SLYKE        425 Metro Place North Suite 460
Plunkett Cooney        Dublin, Ohio  43017
300 East Broad Street Suite 590
Columbus, Ohio  43215

*Edwards, J.*

{¶1} Defendant-appellant, David Fillmore, appeals from the March 26, 2012, Judgment Entry and Decree in Foreclosure issued by the Delaware County Court of Common Pleas.

STATEMENT OF THE FACTS AND CASE

{¶2} In 1977, appellant David Fillmore acquired title to property located in Dublin, Ohio. On July 17, 1987, appellant married Tracy Lukacs. Pursuant to a limited warranty deed filed for record on July 13, 1990, appellant transferred his interest in the Dublin property, which was a single family residence, to Tracy Lukacs aka Tracy Fillmore.

{¶3} In February of 1991, the marriage of appellant and Lukacs was dissolved in Florida. The Property Settlement Agreement required appellant to "be responsible for all expenses associated with this home and [to] indemnify Wife from any and all expenses including, but not limited to, the mortgage, taxes, association fees and insurance payments."

{¶4} On April 5, 1991, Tracy Lukacs executed a Mortgage Deed in the amount of $50,000.00 to Harold Fillmore, appellant's father. The mortgage deed stated that it was given to secure payment of a promissory note in the principal amount of $50,000.00 with interest that was due and payable on or before April 30, 2010. The mortgage deed was filed for record on April 18, 1991. While appellant claims that there was a note in the amount of $50,000.00 signed by Tracy Lukacs at the same time that provided for interest at the rate of 6%, he contends that the note has been lost and is unable to be located.

{¶5}  In April of 1993, Harold Fillmore executed a Subordination of Mortgage. On or about April 20, 1993, Tracy Lukacs, who refinanced the Dublin property, executed an open-end mortgage in the amount of $175,000.00 to Perpetual Federal Savings Bank of Urbana, Ohio.

{¶6}  In 2001, Lukacs purchased real property located on Sinclair Road in Columbus, Ohio. A General Warranty Deed transferring such property to Lukacs was recorded on or about September 27, 2001. On September 21, 2001, Tracy Lukacs had executed an open-end mortgage in the amount of $450,000.00 in favor of Perpetual Federal Savings Bank of Urbana, Ohio.  The same was secured by the Sinclair Road and Dublin property.  The Sinclair Road property was the home of appellant's auto dealership until 2010.  On the same date, Tracy Lukacs signed an affidavit in which she indicated that she had no knowledge of any encumbrances on title to the Dublin premises other than those set forth in the evidence of title. The $50,000.00 mortgage to Harold Fillmore was not listed on the evidence of title. The Settlement Statement shows that of the $450,000.00, $88,777.66 was paid to Tracy Lukacs and $98,955.27 was used to pay-off the first Perpetual Federal Mortgage.  The $50,000.00 mortgage to Harold Fillmore was not paid out of the loan proceeds.  Appellant, during his deposition, testified that the $88,777.66 was used for expenses relating to his car dealership.

{¶7}  In early 2003, appellant arranged for Tracy Lukacs to refinance and pay-off the $450,000.00 Perpetual Federal mortgage. Tracy Lukacs signed a $380,000.00 note and mortgage in favor of appellee Fifth Third Bank. The mortgage was filed for record on June 26, 2003. On May 30, 2003, Tracy Lukacs had signed an affidavit stating that there were no other encumbrances on the Dublin property. The Settlement

Statement shows that the proceeds from this mortgage were used to pay off the second Perpetual Federal mortgage.

{¶8} On February 17, 2005, Tracy Lukacs executed a quit-claim deed transferring her interest in the Dublin property to Diversified International Properties, Inc., a company owned by appellant. The deed was filed for record on February 28, 2005. Thereafter, on or about April 27, 2005, appellant and Tracy Lukacs entered into an "Agreement." The Agreement stated, in relevant part, as follows:

{¶9} "2. The above referenced property [the Dublin property] shall be retained by Mr. Fillmore and he shall have the exclusive use of the real estate. He shall pay, save, and hold Ms. Lukacs harmless from all debts associated with the property, including, but not limited to, the mortgage, insurance, taxes, utilities, and repairs."

{¶10} Harold Fillmore died testate in 2006 having never demanded repayment of the debt underlying the $50,000.00 mortgage. An estate was opened for him in the Probate Court of Franklin County, Ohio by William Fillmore, his oldest son. On March 5, 2007, William Fillmore filed an Inventory and Appraisal in the estate listing Harold Fillmore's home as the sole asset of the estate.

{¶11} As memorialized in a quit-claim deed filed for record on April 17, 2009, appellant, in his capacity as President of Diversified International Properties, Inc., transferred the Dublin property to himself. The deed was filed for record on April 17, 2009.

{¶12} On October 22, 2009, appellee filed a complaint against Tracy Lukacs, appellant and his unknown spouse, if any, Embers to Ashes, Diversified International Properties, Inc., Kent, Schaeffer, Rowe & Lardiere Co., LPA, Harold Fillmore, Fifth Third

Bank (Central Ohio) and Delaware County Treasurer. Appellee, in its complaint, alleged that Tracy Lukacs had defaulted on the $380,000.00 note and mortgage. Appellee sought judgment against Tracy Lukacs in the amount of $254,682.21 plus interest. Appellee also asked that it be found to have a first lien on the premises. Appellant filed an answer on July 8, 2010. Tracy Lukacs was served via certified mail on November 7, 2009. On September 9, 2009, appellee filed an amended complaint adding the Estate of Harold Fillmore as a defendant.

{¶13} In June of 2010, the Estate of Harold Fillmore was reopened and the $50,000.00 mortgage was listed as a newly discovered asset. On July 10, 2010, the mortgage was assigned by William Fillmore as Executor of the Estate of Harold Fillmore to appellant, William Fillmore and Sara Sue O'Shea. In January of 2011, William Fillmore and Sara Sue O'Shea, appellant's siblings, assigned their interest in the mortgage to him.

{¶14} On August 8, 2011, appellant filed a motion seeking leave to file a cross-claim against Tracy Lukacs. The motion was granted via a Judgment Entry filed on August 10, 2011. Appellant, in his cross-claim, alleged that he was the owner of a note and mortgage in the amount of $50,000.00 executed by Tracy Lukacs and that such mortgage was the first and best lien upon the subject property. Appellant alleged that Lukacs had defaulted on the note and sought judgment against her. On August 16, 2011, appellee filed an amended complaint.

{¶15} On September 15, 2011, appellee filed a notice of dismissal of William Fillmore, Jane Doe, the unknown spouse of William Fillmore, Sara S. O'Shea and her

unknown spouse, David Lister and his unknown spouse, Embers to Ashes, Diversified International Properties, Inc., and Harold Fillmore.

{¶16} On September 22, 2011, appellant filed an answer to appellee's amended complaint.

{¶17} Thereafter, on November 23, 2011, appellee filed a Motion for Summary Judgment, asking the trial court to enter summary judgment in its favor as to its "entitlement to judgment on its promissory note and its ability to foreclose real property commonly known as [Dublin property] in its first lien position against all parties, including Defendant David Fillmore." Appellant filed a memorandum in opposition to appellee's Motion for Summary Judgment on January 13, 2012. Pursuant to a Judgment Entry filed on March 5, 2012, the trial court granted the Motion for Summary Judgment. The trial court, in its Judgment Entry, also noted that Kemp, Schaeffer, Rowe & Lardiere Co., LPA had, on November 18, 2009, filed a Disclaimer of Interest and dismissed it as a party defendant. As memorialized in an Entry filed on March 19, 2012, the trial court granted appellee a default judgment against Tracy Lukacs who, although served with the amended complaint on September 21, 2011, did not file an answer or otherwise respond.

{¶18} A bench trial was held on March 12, 2012 on appellant's cross-claim against Tracy Lukacs. The trial court, pursuant to a Judgment Entry filed on March 19, 2012, held that appellant was not entitled to a default judgment against Tracy Lukacs on his cross-claim because Lukacs had not been properly served with the same. The trial court then dismissed the cross-claim. The trial court, in its Judgment Entry, also dismissed the Estate of Harold Fillmore as a party because, due to the assignment of all

interest in the Harold Fillmore note and mortgage to appellant, it no longer had an interest in the proceedings.

**{¶19}** A Judgment Entry and Decree in Foreclosure was then filed on March 26, 2012.

**{¶20}** Appellant now raises the following assignments of error on appeal:

**{¶21}** "I. THE TRIAL COURT ERRED WHEN APPLYING THE LAW TO THE UNDISPUTED MATERIAL FACTS AND THE PLAINTIFF/APPELLEE'S SUMMARY JUDGMENT BECOMES INAPPROPRIATE AND MUST BE DENIED.

**{¶22}** "II. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT/APPELLANT A DEFAULT JUDGMENT AGAINST DEFENDANT TRACY LUKACS.

**{¶23}** "III. THE TRIAL COURT ERRED WHEN IT FAILED TO RECOGNIZE THAT THE 'HAROLD FILLMORE NOTE' IS A VALID LIEN OWED TO THE DEFENDANT/APPELLANT AND HAS A PRIORITY POSITION OVER THE PLAINTIFF/APPELLEE.

**{¶24}** "IV. THE TRIAL COURT DENIED THE DEFENDANT EQUAL PROTECTION UNDER THE LAW AND THEREFORE VIOLATED HIS CONSTITUTIONAL RIGHTS WHEN IT GRANTED THE MOTION OF THE PLAINTIFF FOR A DEFAULT AGAINST THE DEFENDANT TRACY LUKACS BUT DENIED THE DEFAULT FILED BY THE APPELLANT AGAINST THE DEFENDANT TRACY LUKACS."

**{¶25}** Appellant, in his first assignment of error, argues that the trial court erred in granting summary judgment in favor of appellee on March 5, 2012.

{¶26} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, we must refer to Civ.R. 56 which provides, in pertinent part: "* * *Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.* * *"

{¶27} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment, bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997–Ohio–259, 674

N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 1996–Ohio–107, 662 N.E.2d 264.

{¶28} In the case sub judice, appellee filed a Motion for Summary Judgment on November 23, 2011, asking the trial court to enter summary judgment in its favor as to its entitlement to judgment on its promissory note and its ability to foreclose on the Dublin property, "in first lien position against all parties, including [appellant]." Appellant filed a memorandum in opposition to the same, arguing, in part, that he was the owner of a note and mortgage executed by Tracy Lukacs and that "[t]he Harold Fillmore mortgage which has been assigned to [appellant] is first in priority ahead of [appellee's] mortgage…" In support, of his memorandum, appellant submitted his January 11, 2012, affidavit. Appellant, in his affidavit, stated, in relevant part, as follows:

{¶29} "1. I, David Fillmore, am the holder of the note between Harold Fillmore and Tracy Lukacs which is identified in Exhibit 1.

{¶30} "2. I am entitled to enforce the note referred to above, and that the note was lost and could not be located.

{¶31} "3. The note referred to herein is in default, and was due on April 30, 2010 and said note bore the interest rate of six percent (6%) and is wholly unpaid. Therefore, the entire amount of $50,000.00 plus interest at six percent (6%) from April 5, 1991 which for 19 years calculates to be $151,279.98 with such interest to continue from April 30, 2010 per the mortgage (Exhibit 1) until paid in full. See Exhibit A. attached to this affidavit which is the true and accurate calculation for the mortgage (Exhibit 1) at 6% for 19 years.

**{¶32}** "4. Although the mortgage can be located since it is of recorded (sic) in the Delaware County, Ohio Recorder's Office the actual note is lost and cannot be located. A diligent search has been made and the note is in fact lost and cannot be located. I am personally aware of the terms of the note and the interest rate was six percent (6%) with the balance of the terms being as they appear on the mortgage (Exhibit 1).

**{¶33}** "5. I am the rightful person in possession and the loss of possession was not the result of a transfer to anyone or a lawful seizure.

**{¶34}** "6. Exhibit 1 is a true and accurate copy of the mortgage given to Harold Fillmore for his loan of $50,000.00 to Tracy Lukacs.

**{¶35}** "7. Exhibit 5 contains all true and accurate copies of the documents which ultimately transferred Exhibit 1 and the promissory note associated with it to me."

**{¶36}** R.C. 1303.38, which is captioned " Enforcement of lost, destroyed, or stolen instrument", states as follows: "

**{¶37}** "(A) A person not in possession of an instrument is entitled to enforce the instrument if all of the following apply:

**{¶38}** "(1) <u>The person was in possession of the instrument and entitled to enforce it when loss of possession occurred.</u>

**{¶39}** "(2) The loss of possession was not the result of a transfer by the person or a lawful seizure.

**{¶40}** "(3) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

**{¶41}** (B) A person seeking enforcement of an instrument under division (A) of this section must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, divisions (A) and (B) of section 1303.36 of the Revised Code applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection for the person required to pay the instrument may be provided by any reasonable means." (Emphasis added).

**{¶42}** The burden of proof to recover on a lost note is by a preponderance of the evidence. *In re Perrysburg Marketplace Co.*, 208 B.R. 148 (Bankr. N.D. Ohio 1997).

**{¶43}** As noted by appellee in its reply to appellant's memorandum, "the fatal flaw with [appellant's] reliance on R.C. 1303.38 is that his self-serving Affidavit does not establish that very first element." Nowhere in his affidavit does appellant allege that he was in possession of the note and entitled to enforce it when the loss of possession occurred. Appellant would not have been entitled to enforce the alleged note until the mortgage was assigned to him by his brother and sister in January of 2011. Appellant then would have had to have lost the note after such time. Appellant's affidavit, however, does not allege that he lost the note after the assignment. Appellant, therefore, does not meet the criteria under R.C. 1303.38(A) to be able to foreclose the mortgage based upon a lost note. There is no evidence of a debt to support the $50,000.00 mortgage.

{¶44} Appellant also contends that the subordination agreement executed by Harold Fillmore was defective and that appellee had actual knowledge of the defect. As is stated above, Harold Fillmore, in April of 1993, signed a "Subordination of Mortgage which stated, in relevant part, as follows: "…the undersigned, owner and holder of a mortgage recorded in Volume 549, page 13, Franklin County, Ohio, Recorder's Office, does hereby subordinate and waive the priority thereof in favor of a mortgage in the sum of Fifty Thousand and no/100 …from Tracy Lukacs to Harold Fillmore filed for record with the Franklin County Ohio Recorder's Office on April 18, 1991…" The Subordination Agreement was filed on April 29, 1993.

{¶45} The court, in *DB Midwest, LLC v. Pataskala Sixteen, LLC*, 3rd Dist. No. 8-08-18, 2008-Ohio-6750, stated, in relevant part, as follows:

{¶46} "In general, the first mortgage on a parcel of real property recorded at the county recorder's office in the county in which the property is situated has priority over all subsequent mortgages on that same property. R.C. 5301.23; *L.O.F. Employees Federal Credit Union v. Hahn,* 6th Dist. No. L-82-258, 1982 WL 6663. However, the parties may waive priority by two distinct methods. First, pursuant to R.C. 5301.35, the party with the mortgage priority may waive that priority by noting the waiver on the original mortgage and signing it, by noting the waiver on the margin of the record of the mortgage and signing it, or by executing a separate acknowledged instrument waiving priority, as provided under R.C. 5301.01. *Id.* Second, the parties may also waive priority by a separate independent agreement. *Id.,* citing *Glick v. Marscot* (App. 1931), 10 Ohio Law Abs. 250; *Curtis v. J.L. Shunk Rubber Co.* (App. 1931), 9 Ohio Law Abs. 375.

**{¶47}** "To be given effect, all subordination agreements must comport with traditional contract law principles. *Ross v. Roberson,* 2d Dist. No. CA 9983, 1987 WL 5532. "The elements necessary to form a contract include 'an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object of consideration.'" *Brotherwood v. Gonzales,* 3d Dist. No. 10-06-33, 2007-Ohio-3340, ¶ 12, quoting *Kostelnik v. Helper,* 96 Ohio St.3d 1, 3, 770 N.E.2d 58, 2002-Ohio-2985. Furthermore, the contracting parties must have a meeting of the minds on the essential terms of the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Industrial Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134.

**{¶48}** "Ohio case law does not set forth an established standard as to what essential terms are necessary to make a subordination contract enforceable; however, important terms that have been mentioned are "maximum terms for loan amounts, interest rates, and loan periods, as well as limitations upon the use of loan proceeds." *Builders Fidelity Acceptance Corp. v. Daily,* 9th Dist. No. 9877, 1981 WL 3914, citing *Troj v. Chesbroc* (1972), 30 Conn.Supp. 30, 296 A.2d 685; *Hux v. Raben* (1966), 74 Ill.App.2d 214, 219 N.E.2d 770, aff'd (1967), 38 Ill.2d 223, 230 N.E.2d 831; *Grooms v. Williams* (1961), 227 Md. 165, 175 A.2d 575. Moreover, a subordination agreement may be informal, but "it must at least be an agreement, a 'bargain of the parties in fact as found from their language or by implication from other circumstances.' " *Total Technical Services v. Kafoure Associates,* 8th Dist. Nos. 51339, 51401, 1986 WL 13687, quoting R.C. 1301.01(C)." Id at paragraphs 18-20.

**{¶49}** In *DB*, the court held that a subordination clause containing only a general agreement between LPZ and Pataskala that LPZ would subordinate its first lien priority, with no specifics as to the amount of the subordination, length of time of the subordination, when the subordination would occur, or to whom it would subordinate, lacked specific, essential terms and that there was no meeting of the minds to constitute a valid and enforceable agreement under contract law principles.

**{¶50}** Likewise, in the case sub judice, the subordination agreement lacks specific essential terms as to length of time of the subordination, when the subordination would occur, or to whom Harold Fillmore would subordinate. Significantly, the Preliminary Judicial Report for the Dublin property, which was prepared for appellee in October of 2009, and was attached to a May 3, 2011, court filing indicates that "[i]t appears that the above Subordination was incorrectly prepared as does not reference the Mortgage that it is being waived for." Thus, appellee had actual knowledge of the defect in 2009. We find that the subordination agreement was not valid and enforceable. However, as is stated above, appellant does not meet the criteria to be able to foreclose the mortgage because he did not possess the note underlying the mortgage when the note was lost.

**{¶51}** Appellant also claims that the trial court erred in applying the doctrine of equitable estoppel. However, the trial court did not apply the doctrine of equitable estoppel. The trial court decided the issue of lien priority on the basis of equitable subrogation. In its March 5, 2012, Judgment Entry, the trial court specifically held, in relevant part, that "applying the doctrines of equitable subrogation, as well as merger, the Court finds that Plaintiff has sustained its burden and is entitled to be found to hold a

valid first lien: upon the Dublin property. Equitable subrogation and equitable estoppel are separate legal concepts, and one or both may apply in a given case. See, e.g., *Blue View Corporation v. Rhynes,* 9th Dist. No. 23034, 2006–Ohio–4084 and *One West Bank, FSB v. Miller*, 5th Dist. 11CA013, 2011-Ohio- 6467.

**{¶52}** However, the trial court did grant summary judgment in favor of appellee on the basis of equitable subrogation. This Court recently reviewed the doctrine of equitable subrogation in *Aurora Loan Servs., LLC v. Molter,* 5th Dist. No. 09 CAE 09 0086, 2010-Ohio-3704. We stated,

**{¶53}** "In Ohio, '[w]hen the rights of parties are clearly defined and established by law, the courts usually apply the maxim 'equity follows the law'; however, where the rights of the parties are not so clearly delineated, the courts will apply broad equitable principles of fairness.' *Blackwell v. International Union, United Auto Workers Local No. 1250* (1984), 21 Ohio App.3d 110, 487 N.E.2d 334, paragraph four of the syllabus. Traditionally, the equitable doctrine of subrogation grants relief to a party in order to prevent fraud, or to grant relief from mistake; the application of subrogation depends upon the facts and circumstances of each particular case. See *Alegis Group L.P. v. Lerner,* Delaware App.No.2004-CAE-05038, 2004-Ohio-6205, ¶ 10, (additional citations omitted). The Ohio Supreme Court, in *State Dept. of Taxation v. Jones* (1980), 61 Ohio St.2d 99, 399 N.E.2d 1215, recited the general definition of equitable subrogation as that which ' * * * arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has

paid.' *Id.* at 102, 399 N.E.2d 1215, citing *Federal Union Life Ins. Co. v. Deitsch* (1934), 127 Ohio St. 505, 189 N.E. 440." *Id.* at ¶ 27.

**{¶54}** The application of equitable subrogation depends on the facts and circumstances of each case and is largely concerned with the prevention of fraud and relief against mistakes. *Jones,* 61 Ohio St.2d at 102, 399 N.E.2d 1215. "In order to claim the benefits of equitable subrogation, a party's equity must be strong and its case clear. *Jones,* supra, at 103, 399 N.E.2d 1215. In addition, the basis for a claim of equitable subrogation must be readily apparent. *Bank of New York v. Fifth Third Bank of Central Ohio,* Delaware App. No. 01 CAE 03005, 2002-Ohio-352." *Aurora Loan Servs., LLC* at ¶ 27.

**{¶55}** "Because equitable subrogation is an equitable doctrine, the equity of the party asserting it 'must be strong and his case clear.'" *ABN AMRO Mortg. Group, Inc. v. Kangah,* 126 Ohio St.3d 425, 934 N.E.2d 924, 2010–Ohio–3779, ¶ 11, citing *Jones,* 61 Ohio St.2d at 102, 399 N.E.2d 1215 (citation omitted). In order for equitable subrogation to apply, a lender should have satisfied a prior mortgage or debt, had the intent to hold the first position lien, and the mortgage sought to be subrogated must have failed to end up in the first lien position through mistake. See *Kangah,* 2010–Ohio–3779, at ¶ 13, 126 Ohio St.3d 425, 934 N.E.2d 924.

**{¶56}** In the case sub judice, the trial court found that there were three undisputed mistakes that prevented appellee's mortgage from conventionally being the first lien. The trial court specially cited to the following.

**{¶57}** "1. The Subordination of Mortgage executed by Harold L. Fillmore in April, 1993 did not name First Perpetual Mortgage as the 'superior mortgage.'

**{¶58}** "2. Perpetual Federal Savings Bank of Urbana, Ohio failed to disclose the Fillmore Mortgage when the Second Perpetual Mortgage was obtained by Defendant Tracy K. Lukacs on or about September 21, 2001.

**{¶59}** "3. Fifth Third Mortgage Company failed to disclose the Fillmore Mortgage when the Fifth Third Mortgage was obtained by Defendant Tracy K. Lukacs on or about May 30, 2003."

**{¶60}** As noted by the trial court, the second two mistakes were the result of Tracy Lukacs signing an affidavit at closing stating that she was unaware of any other liens not listed on the closing documents.

**{¶61}** As is stated above, Tracy Lukacs, in 2001, executed an open-end mortgage in the amount of $450,000.00 in favor of Perpetual Federal Savings Bank of Urbana, Ohio and personally received $88,777.66 of the $450,000.00. She did not use these funds to pay off the Fillmore $50,000.00 mortgage. During his deposition, appellant testified that he was the one who sought out financing in 2001, although the financing was in Lukacs' name, and that the money was used to buy property for his car dealership. He further testified that while the $88,777.66 could have been used to pay off his father, they needed the money for something else and he thought that it might have been used for inventory. As noted by the trial court, appellant directly benefited from these funds and personally benefited when the $50,000.00 mortgage was not paid.

**{¶62}** In addition, appellant also benefited when the Fifth Third mortgage proceeds were used to satisfy a mortgage loan on his Sinclair Road business property. Appellant then sold such property free and clear.

{¶63} In sum, Fifth Third Bank loaned money to Tracy Lukacs which was secured by a mortgage against property. Part of this loaned money was used to pay off the second Perpetual Federal Savings loan, which had been secured by a mortgage. Had Fifth Third Bank known of the mortgage and note to Harold Fillmore against the property, that debt would have been paid also with the proceeds borrowed from Fifth Third Bank because Fifth Third would have done that to protect its lien priority. It appears that Fifth Third and Perpetual were negligent in not discovering the mortgage to Harold Fillmore and/or in not determining the subordination of mortgage was not valid. But, it also appears that Tracy Lukacs signed affidavits misleading Fifth Third and Perpetual into believing that there were no other outstanding mortgages on the property, and then did not use the borrowed money to pay off all debts on the property even though there was money available to do that. We find that the trial court did not error in weighing the equities and in determining that the fraudulent actions of Lukacs should not be rewarded over the negligent actions of Fifth Third and Perpetual.

{¶64} Based on the foregoing, we find that the trial court did not err in holding that, on the basis of equitable subrogation, appellee had a valid first lien on the Dublin property.

{¶65} Appellant's first assignment of error is, therefore, overruled.

II, IV

{¶66} Appellant, in his second assignment of error, argues that the trial court erred in dismissing his cross-claim against Tracy Lukacs. In his fourth assignment of error, appellant contends that the trial court denied him equal protection under law when

it denied him a default judgment on his cross-claim against Lukacs after granting appellee a default judgment against Lukas on the complaint.

{¶67} On August 17, 2011, appellant filed his cross-claim against Tracy Lukacs, alleging that he was the owner of a note and mortgage executed by her and demanding judgment against Lukacs. At the time, Lukacs had not filed an answer to the original complaint. Appellant served Lukacs by ordinary mail and did not request Summons with proper service. Lukacs did not file an answer to the cross-claim and the trial court, in its Mach 19, 2012, Judgment Entry, dismissed appellant's cross-claim for lack of service.

{¶68} Civ.R. 5(A) states, in relevant part, as follows:

{¶69} "Except as otherwise provided in these rules, * * * every pleading subsequent to the original complaint * * * shall be served upon each of the parties. *Service is not required on parties in default for failure to appear except that pleadings asserting new or additional claims for relief or for additional damages against them shall be served upon them in the manner provided for service of summons in Civ.R. 4 through Civ.R. 4.6.*" (Emphasis added.)

{¶70} In the case sub judice, appellant's attorney sent Lukacs the cross-claim by ordinary mail. He did not serve appellant in the manner provided for service of summons in Civ.R. 4 through Civ.R. 4.6 (which is ordinarily by certified mail). We find, therefore, that the trial court did not err in holding that it had no jurisdiction to render judgment against Lukacs in favor of appellant on appellant's cross-claim and in dismissing the cross-claim. See *Kral Builders Supply, Inc. v. Gerl*, 27 Ohio App.3d 353, 501 N.E.2d 101 (8th Dist. 1986). While appellant asserts, in his fourth assignment of

error, that his constitutional rights were violated because the trial court granted appellee a default judgment against Lukacs on its complaint while denying him a default judgment on his cross-claim against her, appellant has cited no case law in support of this assertion. Nor does appellant argue that Lukacs was not properly served by appellee with the complaint and that the trial court, therefore, had no jurisdiction to render judgment in favor of appellee on its complaint against Lukacs.

{¶71} Appellant's second and fourth assignments of error are, therefore, overruled.

III

{¶72} Appellant, in his third assignment of error, argues that the trial court erred when it failed to recognize that the "Harold Fillmore Note" is a valid lien owed to appellant and has a priority position over appellee. Appellant, in his brief, incorporates the arguments that he made in support of his first and second assignments of error.

{¶73} Based on our disposition of the same, appellant's third assignment of error is overruled.

{¶74} Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.


By: Edwards, J.

Gwin, P.J. and

Hoffman, J. concur

_____

_____

_____

                    JUDGES

JAE/d1101

[Cite as *Fifth Third Mtge. Co. v. Fillmore*, 2013-Ohio-312.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| FIFTH THIRD MORTGAGE COMPANY | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DAVID FILLMORE | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 12 CAE 04 0030 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES